CASE 63—CONTESTED ELECTION—APRIL 21.

# Smith, Etc. v. Patton, Etc.

### APPEAL FROM PULASKI CIRCUIT COURT.

1. LOCAL OPTION ELECTIONS—REQUISITE OF PETITION FOR.—The provisions of the statute fixing the manner in which local option elections may be called, requiring a written petition signed by a number of legal voters in each precinct of the territory to be affected, equal to twenty-five per cent. of the votes cast in each of such precincts at the last general election, to be presented to the county judge, is complied with when there is filed with him separate papers from each of the precincts in the territory to be affected, containing the signatures of the required number of voters in each.

2. STATUTORY CONSTRUCTION.—Under the local option law, a city embraced within a county which has voted against the sale of liquor therein is controlled in the matter by that vote, unless a separate election on the question is held in the city, resulting differently from the election in the county.

3. STATUTORY CONSTRUCTION.—A vote on the question of local option in one sub-division of the county does not deprive the county, as a whole, of the right to take a vote on the question within three years of such election held in the sub-division.

4. STATUTORY CONSTRUCTION.—The provisions of sec. 2558 of the

Smith, etc. v. Patton, etc.

Kentucky Statutes prescribing the necessary steps in order to have such local option election apply to druggists, having all been complied with, it was not necessary that the question propounded to the voter at the election should submit to him the proposition whether the result thereof was intended to apply to druggists.

5. STATUTORY CONSTRUCTION.—The provision of sec. 2554 of the Kentucky Statutes that the order directing a local option election to be held must be made by the county court at the next regular term thereof after receiving the petition, does not require the petition to be filed at a regular term of the court.

O. H. WADDLE FOR APPELLANTS.

1. There was no written application by written petition signed by the requisite number of voters presented to, or received by the county court before the order for the election was made; the presentation of twenty-six different petitions from the twenty-six different precincts of the county was not a compliance with the provisions of sec. 2554 of the Kentucky Statutes.

2. The city of Somerset, a city of the fourth class, being within the limits of the county, can not be controlled in its police regulations by the vote of the entire county. 11 Am. & Eng. Ency. of Law, 632.

3. Four of the precincts within the county having held local option elections within three years prior to this election, the same is invalid.

4. Notwithstanding the orders of the county court made the election apply to druggists, the question as submitted to the voters did not include them.

5. The petitions under which the election was ordered having been received by the judge at about 4 o'clock on Saturday, and the order for the election made on the following Monday morning, the petitions were not received, or the order for the election made as required by law; the county court in special session had no jurisdiction to receive the petition, and if it had such jurisdiction the regular term of the county court held on the following Monday had no jurisdiction to order the election. 25 Am. & Eng. Ency. of Law, 945; Doores v. Varnon, 94 Ky., 507; Webb v. Smith, 17 Ky. Law Rep., 1308; Wilson v. Hines, 99 Ky., 221.

JAMES DENTON AND J. R. COOK FOR APPELLEES.

1. The fact that the petition filed with the county judge was for convenience placed on different sheets of paper does not make it more than one petition.

2. Under the local option law, the county as a whole, including any and all cities therein, may vote upon the question of local option. Sec. 61 of the Constitution; Ky. Statutes, sec. 3940; Cooper v. Shelton, 97 Ky., 282.

3. The fact that in certain precincts of the county there were held local option elections within three years of the time the election in question was held, does not prevent the holding of the election in the county as a whole. Ky. Statutes, sec. 2560.

4. It was not necessary that the questions submitted to the voters on the ballot should specifically include druggists, if the provisions of the statute necessary to include them had been complied with. Gayle v. Owen Co., 83 Ky., 61.

5. Sec. 1058 of the Ky. Statutes provides that special terms of the county court may be held at any time for the transaction of any business, except the probating of wills or granting tavern, liquor, or druggists' license; and the language of that section is certainly broad and comprehensive enough to authorize the county court to receive a petition for a local option election at a special term called for that purpose.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

The questions raised on this appeal, involve the validity of the local option election held in Pulaski County on August 3, 1896. The grounds relied on to invalidate the the election are:

First, that there was no application by written petition signed by the requisite number of voters presented to or received by the county court before the order for the election was made;

Second, that the city of Somerset, a city of the fourth class, being within the limits of the county, can not be controlled in its police regulations by the vote of the entire

county, and that the election held in the entire county, without any distinction as to the city, was invalid;

Third, that four precincts within the county had held similar elections within three years preceding this election, and that the vote taken in the entire county included these precincts without reference to the previous elections held herein;

Fourth, that the question propounded to the voter did not properly submit to him the question whether druggists should be licensed to sell liquor or not;

Fifth, that the petition under which the election was ordered, having been received by the judge on Saturday afternoon and the order for the election having been made on the following Monday morning, the petition was not received and the order for the election was made as required by law, and that therefore the election was illegal and void.

The agreed facts as shown by the record are as follows: About 4 o'clock P. M., May 16, 1896, twenty-six petitions in proper form were filed, all being attached together, with the county judge of Pulaski County requesting him to make an order directing an election to be held in that county on August 3, 1896, upon the proposition whether or not spirituous, vinous or malt liquors should be sold, bartered or loaned in the county, and requesting that the law and prohibition should be made to apply to druggists; each of the twenty-six petitions was signed by the legal voters of its respective precinct alone, there being twenty-six precincts in the county; these petitions were all alike, except that each showed the precinct from whence it came,

and were signed by a number of legal voters in the respective precincts in excess of 25 per cent. of such legal voters; when these petitions were presented to the county judge a special term of the Pulaski County Court was called for the reception and filing thereof and the usual orders to this effect were entered upon the records of the court by the clerk thereof, and on the following Monday morning, May 18, 1896, which was the first day of the next regular term of the Pulaski County Court after the reception of these petitions, the court entered an order directing that an election be held by the sheriff in Pulaski County in each precinct thereof at the following August election, which occurred on the 3d day of August, 1896, to take the sense of the legal voters of the county upon the proposition above named; and it was further ordered that if such election should result against the sale of such liquors, then the provisions of the local option law and its prohibition should also apply to the druggists in that county, and notice of such election, in conformity with the petitions and order of the court, was properly given, and in pursuance thereto the election was held, and resulted in a large majority of the ballots being cast in favor of the proposition in every voting precinct of the county; no special election was called for the city of Somerset, although precincts Nos. 1 and 2 cover the whole territory of the city and do not embrace any territory outside the limits thereof; previous elections had been held upon the same proposition in precincts Nos. 7, 8, 9 and 10 of the county within the three years preceding this election.

Smith, etc. v. Patton, etc.

We will take up these grounds of contest *seriatim:*

First, it was not necessary that the names of all the petitioners should have been signed to the same petition. All that the statute requires is that a written petition, signed by a number of legal voters in each precinct of the county to be affected, equal to 25 per cent. of the votes cast in each of such precincts at the last preceding general election, shall be presented to the county judge. "To petition," in the meaning of the statute, is simply to make a request of the court in writing, and the gist of the statute, so far as this requirement is concerned, is that before the county shall be subjected to the expense of such an election it should be demonstrated that at least 25 per cent. of the voters of the county desire such an election to be held; and in this case this object was accomplished quite as well when the names of the petitioners appeared on twenty-six different papers of the same import as if they had all been attached to a single petition.

Second ground of contest relied on is that the city of Somerset should not be controlled in this matter by the vote of the county outside of the territorial limits thereof, as it is a distinct corporate body, having a separate government from the remainder of the county and subject to burdens and responsibilities which precincts outside the city do not share.

The admirable argument of counsel on this point might have been profitably listened to by the legislature at the time it was considering this statute, but as it is the duty

[29]

of this court to interpret laws, and not to legislate, we can find no justification for this conclusion.

Section 2554, Ky. Stats., the first section of the local option act of March 10, 1895, provides that such an election may be held in the county, city, town, district or precinct, as the case may be, and this question received careful consideration at the hands of this court in Cole v. Com., 101 Ky., 151; in which it was held that under the law a county has the right to vote on this question as a whole, but that "if simultaneously or subsequently a smaller and independent sub-division of the county, upon which is also conferred the right to exercise its choice, does exercise it, subject to the limitations provided by the statute, with a different result, the territory of the smaller division is excepted from the dominion of the larger, if it chooses so to act."

As to the third ground of contest relied on, that four precincts within the county which voted at this election had held similar elections within three years prior thereto, it seems to us that this state of case is recognized and clearly provided for in section 61 of the Constitution and section 2560 of the Ky. Stats., and that a vote in one of the sub-divisions of the county does not deprive the whole of the county of the right given by the Constitution to take a vote on this question; but that the result of such votes shall not interfere with or repeal any law in force relating to the sale or gift of such liquors. (See Stamper v. Com., 102 Ky., 33).

The fourth objection is based upon the ground that the question propounded to the voter did not submit to him

the proposition that the result of the election was intended to apply to druggists.    Section 2558, Ky. Stats. says:

"Nor shall the provisions of this act apply to druggists, unless it be written in the petition, notice and order for the election that the provisions of this law and prohibition shall apply to druggists."

All these requirements of the statute were complied with, and there is no fraud alleged or fact proven which tends to show that the voters were deceived or in ignorance as to the provisions of the act in regard to which they were voting.  The notice provided for and afforded convenient and full information as to the scope and purposes of the election, and the voters must be presumed to have known what they were voting for.  (See Gayle v. Owen County Court, 83 Ky., 7.

The last ground upon which appellants rest their contest is, first, did the court have jurisdiction at a called term to receive and file the petition for the election, and, second, whether at the regular term of the county court held on the following Monday, after the petition had been received and filed at the called term on Saturday, it had jurisdiction to order the election.,

It is insisted by counsel that in Section 2554, Ky. Stats. the first section of the local option statute provides that the order directing the election to be held must be made at the next regular term thereof after receiving the petition; that the word "next" is not synonymous with the word "first," and shows an intention that all proceedings relating to this question should be had at regular terms

of the court, and not at called terms, and relies, to support his contention, upon the cases of Doores v. Varnon, 94 Ky., 577; 99 Ky., 11; Wilson v. Hines, 18 Ky. L. R., 233, and Cress v. Com., 18 Ky. L. R., 633.

In Doores v. Varnon the petition of voters and tax-payers was presented to the county judge and filed on the same day on which the order was entered directing the sheriff to open the polls to take the vote, and the court held in that case that the act authorizing the tax required the order for the election to be made at a regular term succeeding that at which the petition was filed, and was mandatory.

In Webb v. Smith the petition was lodged in the clerk's office, no record being made of the filing of same until the entry of the order for the election, and the court held in that case that "The petition must be filed at one term and the order made at a subsequent term."

Both of these cases arose upon the construction of the provisions of the statute authorizing the levy of taxes under the provisions of the common school law, and as the language in that statute is almost identical with the language in the one under consideration, the construction given in one under the one statute would be equally applicable to the other. And this view was fully concurred in in Wilson v. Hines, which was a contest growing out of the construction of the local option law. In that case the petition was handed to the county judge on Sunday, the day before the first day of the April term of the county court; and the order directing the election to be held was made the next day, no record being made of the filing

of the petition until the day when the order for the election was entered; and the same state of facts obtained in Cress v. Com., *supra.*

In the foregoing cases the point upon which the decision of the court turned was that there must be such action taken by the court at the time the petition is filed in the county court as would make it a part of the records of the court, and that this must be done at a term previous to that at which the order of election is entered; holding that the words "received by the judge" meant received by the county court when in session.

The question as to whether the petition could be received and noted of record at a called term, was not considered or passed upon in either of the cases cited. And while the speculation indulged in in Doores v. Varnon, as to the probable motive that induced the legislature to require a postponement of the entry of the order of election to a subsequent regular term from that at which the petition was received and filed, tends to support the contention of appellant as to the proper construction to be given to the statute, it is well to remember that it is the decision, or judgment rendered in the case, and not the opinion of the court, which makes the precedent. (See Black on Interpretation of Laws. p. 384).

Section 1058 Ky. Stats. provides that "special terms of the county court may be held at any time for the transaction of any business, except the probating of a will or the granting of tavern, liquor or druggists' license; and the court may adjourn from time to time until the business is disposed of, but no adjournment shall be to a time be-

Smith, etc. v. Patton, etc.

yond the commencement of the next regular term." · And it would be doing violence to the plain letter of this provision of the statute to hold that the county court did not have jurisdiction to receive and file the petition for such an election at a called term, as this statute gives it the power to perform any act within the scope of its jurisdiction at such terms, except those acts which the statute expressly requires should be performed at a regular term.

In Com. v. Graves & Clary, 18 B. M., 34, the court said:

"The only person authorized to determine as to the necessity of a special term is the county judge, and he has the right to call such terms when in his judgment it is necessary for the immediate action of the court in regard, not only to the estate of the deceased persons, but any other business over which the court has jurisdiction."

The facts of the case at bar clearly distinguish it from those cited in the very particular in which the judgment in those cases turned. The petition here was presented filed and made a part of the record at a called term of the court, and this was done previously to the next regular term thereafter at which the order of election was made.

There is no suggestion that the names signed to the petition were not those of legal voters of the county or any allegation of irregularity in the election itself; and as there has been a literal compliance by the petitioners with the procedure required by the provisions of the statute for holding such elections, the judgment must be affirmed.

Chief Justice Lewis and Judges White and Guffy dissented from this opinion.